UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREEDOM MORTGAGE CORPORATION, | No. 2:19-cv-2432 MCE DB PS |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS |
| v. | |
| CHRISTINA MADARIAGA, and SIELA MADARIAGA, | |
| Defendants. | |

Defendant Christina Madariaga is proceeding in this action pro se.[1]  This matter was, therefore, referred to the undersigned in accordance with Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).  (ECF No. 11.)  Pending before the undersigned is plaintiff's motion for summary judgment.  (ECF No. 56.)  For the reason explained below, the undersigned recommends that plaintiff's motion for summary judgment be denied.

**BACKGROUND**

Plaintiff Freedom Mortgage Corporation ("FMC") commenced this action on December 4, 2019, by filing a complaint and paying the applicable filing fee.  The complaint alleges that on

---

[1] Defendant Siela Madariaga has not appeared in this action and the Clerk entered defendant's default on June 18, 2020.  (ECF No. 17.)

1

October 2, 2015, plaintiff became the loan servicer for a note secured by deed of trust for real property owned by defendant Christina Madariaga and defendant Siela Madariaga. (Compl (ECF No. 1) at 1-2.[2]) The real property is located in Stockton, California. (Id. at 2.) In June of 2019, defendants made a payment to FMC in the amount of $4,232.59. (Id.) Thereafter, defendants requested a payoff quote. (Id.) Defendants sold the real property on June 11, 2019. (Id. at 3.) However, prior to the sale the payment was rescinded. (Id. at 2.)

Old Republic National Title Insurance Company ("Old Republic") wired FMC the proceeds from the sale of the property, $114,568.37. (Id. at 3.) However, these funds were insufficient to pay off defendants' loan due to the rescinded $4,232,59 payment. (Id.) Defendants called FMC and misled FMC into believing that the $114,568.37 needed to be returned to Old Republic. (Id.) Defendants provided FMC with wiring instructions to an account with Wells Fargo. (Id.) FMC, however, noticed that the bank that initiated the funds transfer was Bank of the West and contacted defendants. (Id.)

Thereafter, defendants provided new wiring instructions for an account at Bank of the West. (Id.) FMC transferred the funds to the account at Bank of the West believing that the funds were going to Old Republic. (Id.) Instead, defendants "were the beneficiary of the Bank of the West account number that was provided." (Id.) Although the property has been sold to a third party and defendants have no interest in the property, defendants have refused to acknowledge their actions or return the funds. (Id. at 4.)

Based on these allegations the complaint alleges causes of action for conversion, unjust enrichment, fraud, and civil theft.[3] (Id. at 4-6.) Defendant Christina Madariaga filed an answer on February 11, 2020. (ECF No. 6.) On June 18, 2020, plaintiff requested entry of default as to defendant Siela Madariaga. (ECF No. 16.) Default was entered as to defendant Siela Madariaga on June 18, 2020. (ECF No. 17.)

---

[2] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

[3] Subject matter jurisdiction over these state law claims is premised on the court's diversity jurisdiction. (Compl. (ECF No. 1) at 2.)

On February 7, 2022, plaintiff filed the pending motion for summary judgment. (ECF No. 56.) Defendant Christina Madariaga filed an opposition on February 18, 2022. (ECF No. 59.) Plaintiff did not file a reply. On March 4, 2022, plaintiff's motion was taken under submission. (ECF No. 60.)

## PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

Plaintiff's statement of undisputed facts is supported by citation to exhibits and a declaration. (ECF No. 56-2.) Plaintiff's statement establishes, in relevant part, the following. On April 18, 2009, defendant Christina Madariaga and defendant Siela Madariaga executed a note, secured by a deed of trust on real property located at 741 Fordham Dr., Stockton, CA 95210 (the "Property"). Plaintiff FMC serviced defendants' mortgage loan for the Property from October 2, 2015, to the present. (Def.'s SUDF (ECF No. 56-2) 1-2.[4])

In early June of 2019, defendants submitted a payment to FMC for $4,232.59. Following the $4,232.59 payment, defendants owed $114,374.37 on their Account. Shortly after submitting the $4,232.59 payment to FMC, defendant Siela Madariaga requested a payoff quote for the Account. FMC issued a payoff quote in the amount of $114,374.37, which reflected the $4,232.59 payment being applied to the Account. (Def.'s SUDF (ECF No. 56-2) 3-6.)

On June 11, 2019, defendants sold the Property using Old Republic Title Insurance Company ("Old Republic") as the closing agent for the sale. Old Republic wired FMC funds from an account with Bank of the West in the amount of $114,568.37 (the "Funds") as part of the closing for the Property. However, on June 12, 2019—the day after the sale of the Property—defendants' $4,232.59 payment was reversed. The payment reversal caused the amount due under the mortgage loan to increase and rendered the FMC's previously-issued payoff quote to be artificially low. Due to FMC's reversal of defendants' $4,232.59 payment, the proceeds from the sale of the Property did not completely satisfy defendants' mortgage loan. As a result, the proceeds were not immediately applied to the Account and were otherwise characterized as "unapplied funds." (Def.'s SUDF (ECF No. 56-2) 7-10.)

---

[4] Citations here are to defendant's specific numbered undisputed fact asserted.

3

On July 11, 2019, defendants made a one-time payment of $7,400 towards the unpaid principle balance on the Account. On July 16, 2019, FMC reversed defendants' $7,400 payment because defendants associated an incorrect account number with the payment. On August 27, 2019, defendant Christina Madariaga contacted FMC to determine why the Account was not paid off. At the outset of the call, defendant Christina Madariaga represented that she still lived at the Property. After explaining the series of payment reversals, defendant Christina Madariaga directed FMC to apply the proceeds (then totaling $114,568.87 and held as "unapplied funds") towards all mortgage payments through June 2020. (Def.'s SUDF (ECF No. 56-2) 11-13.)

Applying the proceeds towards all mortgage payments through June 2020 resulted in $98,043.88 being held in "unapplied funds." Because defendant Christina Madariaga represented that she still lived at the Property, an FMC representative stated that FMC could refund the remaining balance placed in "unapplied funds" to allow her to resubmit a proper payoff through either a wire transfer or certified funds. On September 6, 2019, defendant Christina Madariaga contacted FMC and told the FMC representative that she occupied the Property. Based on this representation, FMC stated that the $98,043.88 in "unapplied funds" could be refunded directly to her. (Def.'s SUDF (ECF No. 56-2) 13-14.)

On September 9, 2019, during a call with FMC, defendant Christina Madariaga again stated that she lived at the Property. Defendant then provided wire transfer instructions to the FMC representative so FMC could refund the $98,043.88 in "unapplied funds." On September 10, 2019, defendant told an FMC representative that the Property is her primary address, but that she now had a different mailing address. (Def.'s SUDF (ECF No. 56-2) 15-16.)

On September 11, 2019, defendant Christina Madariaga contacted FMC and stated that the wire transfer could not be completed due to wire transfer limits placed on her bank account. Defendant then provided FMC wire transfer information for another bank account at Wells Fargo. On September 16, 2019, defendant Christina Madariaga contacted FMC about the status of the Funds. The FMC representative stated that the Funds could only be refunded to Old Republic, as that was the entity that originally provided the funds to FMC. (Def.'s SUDF (ECF No. 56-2) 17-18.)

4

On September 18, 2019, defendant Siela Madariaga called FMC about the status of the Funds. When asked about the Wells Fargo account information previously provided by defendant Christina Madariaga, defendant Siela Madariaga stated that neither she nor Christina Madariaga have a Wells Fargo Bank account. Defendant Siela Madariaga then stated that Old Republic wired the Funds through a Bank of the West account. She then provided a Bank of the West routing and account number to FMC. (Def.'s SUDF (ECF No. 56-2) 19.)

On September 18, 2019, FMC initiated a wire transfer to a Bank of the West account for $98,043.88 under the belief that it was transferring said amount to Old Republic. The Bank of the West account the Funds were wired to, however, was not associated with Old Republic. On October 1, 2019, defendant Siela Madariaga contacted FMC. During the call, she stated that the Property was her primary address. On October 4, 2019, defendant Christian Madariaga contacted FMC and requested that all prepayments on the Account through June 2020 be reversed and refunded to her. On October 7, 2019, FMC reversed defendants' January through June 2020 prepayments and initiated a $6,608.65 refund to defendants. (Def.'s SUDF (ECF No. 56-2) 20-23.)

In total, FMC returned $104,652.53 to defendants that should have been used to pay off the Account following the sale of the Property. On October 28, 2019, FMC contacted the defendants and stated that $104,652.53 needed to be immediately returned to Old Republic. Defendant Siela Madariaga stated that neither she nor defendant Christina Madariaga ever provided bank account information to FMC related to the wire transfers. On October 31, 2019, FMC contacted defendant Christina Madariaga and inquired on the location of the funds. When asked, defendant Christina Madariaga ended the call and hung up. In April of 2020, defendants advised FMC that they would not be returning the Funds. (Def.'s SUDF (ECF No. 56-2) 24-27.)

## DEFENDANT'S OPPOSITION

Defendant Christina Madariaga filed an opposition to plaintiff's motion for summary judgment on February 18, 2022. (ECF No. 59.) Defendant's filing fails to comply with Local Rule 260(b). That rule requires a party opposing summary judgment to (1) reproduce each fact enumerated in the moving party's statement of undisputed facts and (2) expressly admit or deny

1  each fact.  Under that provision the party opposing summary judgment is also required to cite
2  evidence in support of each denial.  Defendant's opposition does not reproduce plaintiff's
3  enumerate facts, cites no evidence in support, and consists simply of vague and conclusory
4  allegations.  Instead, defendant's opposition simply generally opposes granting plaintiff summary
5  judgment.

6  For example, defendant's opposition asserts that plaintiff is "depriving" defendant of "life
7  of liberty and right to finance another home," and has "created evil deeds in false claim by default
8  in a non-judicial state[.]"  (Def.'s Opp.'n (ECF No. 59) at 2. )  In the absence of the required
9  admissions and denials, the undersigned has reviewed defendant's filing in an effort to discern
10 whether defendant denies any fact asserted in plaintiff's statement of undisputed facts and, if so,
11 what evidence defendant has offered that may demonstrate the existence of a disputed issue of
12 material fact with respect to any of plaintiff's claims.  The undersigned will discuss defendant's
13 relevant denials, if any, in analyzing plaintiff's motion for summary judgment.

**STANDARDS**

15 Summary judgment is appropriate when the moving party "shows that there is no genuine
16 dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.
17 Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of
18 proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities Litigation,
19 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

20 The moving party may accomplish this by "citing to particular parts of materials in the
21 record, including depositions, documents, electronically stored information, affidavits or
22 declarations, stipulations (including those made for purposes of the motion only), admission,
23 interrogatory answers, or other materials" or by showing that such materials "do not establish the
24 absence or presence of a genuine dispute, or that the adverse party cannot produce admissible
25 evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party
26 bears the burden of proof at trial, "the moving party need only prove that there is an absence of
27 evidence to support the nonmoving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex,
28 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).   In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving

party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## ANALYSIS

Plaintiff's motion asserts that it is entitled to summary judgment on the complaint's claims of conversion, fraud/deceit, civil theft pursuant to California Penal Code § 496, and unjust enrichment. (Pl.'s MSJ (ECF No. 56-1) at 10-15.) "To establish conversion, a plaintiff must show: (1) plaintiffs' ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages." Joe Hand Promotions, Inc. v. Roseville Lodge No. 1293, 161 F.Supp.3d 910, 916 (E.D. Cal. 2016) (quoting Tyrone Pac. Intern., Inc. v. MV Eurychili, 658 F.2d 664, 666 (9th Cir. 1981)).

"[T]he elements of fraud and deceit are (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or 'scienter'); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." Copart, Inc. v. Sparta Consulting, Inc., 277 F.Supp.3d 1127, 1148 (E.D. Cal. 2017) (citations and quotations omitted). A claim of civil theft requires "demonstrating '(1) that the particular property was stolen, (2) that the accused received, concealed or withheld it from the owner thereof, and (3) that the accused knew that the property was stolen.'" Otte v. Naviscent, LLC, 624 B.R. 883, 910 (N.D. Cal. 2021) (quoting Finton Constr., Inc. v. Bidna & Keys, APLC, 238 Cal. App. 4th 200, 213 (2015)). "Unjust enrichment is not a cause of action . . . or even a remedy, but rather a general principle, underlying various legal doctrines and remedies. It is synonymous with restitution." McBride v. Boughton, 123 Cal.App.4th 379, 387 (2004) (citing Melchior v. New Line Prods., Inc., 106

Cal.App.4th 779, 793 (2003)). "[R]estitution may be awarded where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct." Id. at 388.

Here, at the outset it must be noted that the evidence offered by plaintiff is slight, contradictory, and falls far short of satisfying plaintiff's burden of establishing a lack of dispute as to any material fact. In this regard, even the basic monetary transactions between the parties is unclear. Plaintiff's own statement of undisputed facts and evidence appears to show that the defendants submitted to plaintiff full payment of the mortgage in the form of a $114,568.37 wire transfer and a $4,232.59 mortgage payment. (Pl.'s SUDF (ECF No. 56-2) at 8-9.) And that it was plaintiff that refused defendants' $4,232.59 mortgage payment as "reversed" due to an "INCORRECT ACCOUNT." (Pl.'s SUDF (ECF No. 56-2) 10; ECF No. 22-2 at 141.)

Thereafter, defendants submitted a $7,400 payment to plaintiff which plaintiff also "reversed . . . because Defendants associated an incorrect account number with the payment." (Pl.'s SUDF (ECF No. 56-2) 5.) It may well be that defendants' references to an incorrect account number was intentional and part of a scheme to defraud plaintiff. Plaintiff, however, has offered no evidence to establish that interpretation of the events.

Regardless even assuming, *arguendo*, that the defendants intentionally made erroneous payments to plaintiff, plaintiff's own statement of undisputed facts asserts that it was defendant Siela Madariaga that requested a payoff quote. (Pl.'s SUDF (ECF No. 56-2) 3.) And that it was defendant Siela Madariaga that provided the routing information for the allegedly fraudulent wire transfer. (Id. at 29.) Notably absent is evidence of defendant Christina' Madariaga's participation.

Plaintiff's motion, nonetheless, asserts that "at the other end of these wire transfers were the Defendants." (Pl.'s MSJ (ECF No. 56-1) at 5.) That argument is notably different than plaintiff's statement of undisputed facts, which asserts simply that the "account the Funds were wired to was not associated with Old Republic." (Pl.'s SUDF (ECF No. 56-2) 8.) In support of that asserted fact plaintiff has offered what appears to be a simple, one-line, accounting record of a "Wire to Borrower." (ECF No. 22-2 at 171.) The import of the sparse information contained on this one line is entirely unclear.

9

Upon reading plaintiff's argument, the undersigned anticipated that plaintiff would offer in support of summary judgment bank records establishing ownership of the Bank of the West account, as well as perhaps transaction details.[5]  Plaintiff, however, offered no such exhibit. Instead, in a footnote plaintiff states that it "subpoenaed Bank of the West for records relating to the account that received the $104,652.53." (Pl.'s MSJ (ECF No. 56-1) at 8.)  Plaintiff asserts that the records revealed that the account "belonged to S. Madariaga," and that "[i]n the spirt of full transparency, it does not appear that C. Madariaga received the funds." (Id.)

One could argue that full transparency would entail the inclusion of this information in the body of the motion—not in a footnote—as well as presentation of the subpoenaed records. Nonetheless, at a minimum, plaintiff has offered no evidence establishing ownership of the account to which the funds were transferred.  Or evidence of what happened to the funds after they were transferred to the Bank of the West account.

With respect to the evidence plaintiff has offered, much of that evidence directly contradicts plaintiff's argument.  In this regard, plaintiff's motion argues that the defendants "intentionally misled FMC into believing that [the defendants] still lived at the Property." (Pl.'s MSJ (ECF No. 56-1) at 4.)  And that the defendants "knowingly made false statements to FMC regarding them living at the Property months after its sale." (Id. at 13.)

However, plaintiff has offered essentially three items of documentary evidence in support of the assertion that the defendants knowingly made false statements regarding living at the property.  (Pl.'s SUDF (ECF No. 56-2) at 5-8.)  One is the declaration of Reginald A. Watkins, a Senior Vice President, that simply restates the assertion.  (Watkins Decl. (ECF No. 22-1) at 3.) Another item of evidence is plaintiff's account notes which reflect simply "Property Address verified," in various calls between the defendants and plaintiff's account representatives. (ECF No. 22-2 at 152.)

////

---

[5] The undersigned also anticipated that plaintiff's motion would be supported by evidence such as defendant Christina Madariaga's deposition testimony, interrogatories, requests for admission, a declaration from an officer with Old Republic establishing that Old Republic never received the transferred funds, etc.  But plaintiff has not offered evidence of this nature.

And the third item of documentary evidence offered in support is what appears to be a record of a "Wire from Old Republic" dated June 12, 2019. (ECF No. 22-2 at 167.)  The document is difficult to decipher—although it does refer to "BORROWER SIELA MADARIAGA"—and appears to possibly have been incompletely reprinted, as some sentences appear to have been cut off at sides of the page.  Nonetheless, a wire transfer does not establish that the defendants no longer lived at the property as of any specific date.  In this regard, even conclusive evidence that the defendants sold the property on any given date—which plaintiff has not presented—would not establish that the defendants stopped living at the property on that date, as there are multiple plausible scenarios in which one could sell a home but continue to live in it past the date of sale.

Plaintiff also relies on audio recordings of twenty-one phone calls between individuals purported to be the defendants and plaintiff's account representatives.  The tenor of those phone calls is routinely one of the defendants calling with questions or concerns regarding billing disputes and plaintiff's representatives sharing the defendant's confusion or concerns.  Moreover, in at least one audio recording defendant Christina Madariaga informs plaintiff's representative that "the house has been sold."[6]  See Audio File Call ID IR_200114861340190711.

In a call, plaintiff asserts occurred on August 27, 2019 between plaintiff's account representative and defendant Christina Madariaga, plaintiff asserts that the defendant "confirmed that she still lived at the Property." (Pl.'s SUDF (ECF No. 56-2) 5.)  The audio from that conversation is unclear at best, and arguably to the contrary.  In this regard, although the sound is somewhat unclear, it sounds as if the defendant is asked, "Do you currently live at the address?"  Defendant answers, "nope."  Plaintiff's account representative says, "You said no?" And the defendant answers, "Yes." See Audio File Call ID IR_300117431520190828.

Plaintiff's argument that "after FMC refused to directly wire the sale proceeds back to Defendants, and instead required that any wire transfer go directly to Old Republic, Defendants

---

[6] Plaintiff has only alleged dates for certain audio files. However, from the nature of this phone call and plaintiff's argument, it appears that this call occurred prior to the transfer of any funds to the defendants.

1  provided wire transfer information to FMC under the false pretense that said wire information
2  belonged to a bank account associated with Old Republic," is also contradicted by the evidence
3  presented.  (Pl.'s MSJ (ECF No. 56-1) at 4-5.)

4  In this regard, plaintiff states that on September 6, 2019, one of plaintiff's representatives
5  told defendant Christina Madariaga that the money being held in unapplied funds "could be
6  refunded directly to her."  (Pl.'s SUDF (ECF No. 56-2) 6.)  On September 9, 2019, defendant
7  Christina Madariaga called and asked if the funds could be wired "instead of mailing a check."
8  Plaintiff's representative then asks the defendant "for the name of your bank," as well as routing
9  information and "your account number," which the defendant provided.  See Audio File Call ID
10 IR_300190418220190909.

11 According to plaintiff, on September 11, 2019, defendant Christina Madariaga contacted
12 plaintiff "and stated that the wire transfer could not be completed due to wire transfer limits
13 placed on her bank account."  (Pl.'s SUDF (ECF No. 56-2) 17) (emphasis added).  Plaintiff has
14 not provided audio of this call.  However, plaintiff's call logs reflect that the defendant "gave new
15 banking info stating there is no limit on how much can be wired into her account."  (ECF No. 22-
16 2 at 150) (emphasis added).

17 Plaintiff asserts that on September 16, 2019, one of plaintiff's representatives informed
18 defendant Christina Madariaga that the funds could only be refunded to Old Republic.  (Pl.'s
19 SUDF (ECF No. 56-2) at 7.)  Plaintiff has not provided audio of this call.  The account notes for
20 that date do not reflect that.  Account notes for September 17, 2019, however, state "we would
21 wire to tile co as title co sent funds in . . . . Please Return Funds . . . in checking account," and
22 then lists routing and account info for "Wells Fargo."  (ECF No. 22-2 at 151.)

23 Then, according to evidence offered by plaintiff, on September 18, 2019 defendant Siela
24 Madariaga called and spoke with plaintiff's representative, identified as "Jeffrey."  See Audio
25 File Call ID IR_100151831130190918.  Plaintiff's representative requests "the wiring
26 information for the title company."  Id.  The defendant responds that all she has is a receipt from
27 the title company.  Plaintiff's representative states that the representative will inquire with the
28 management team to see "if we can just wire it directly to you."  Id.  The representative then

1  states, "If we can't, I'll do a conference call with you and the title company and get it directly

2  from them." Id.  Plaintiff's representative then says they "will see if we can just send it to your

3  Wells Fargo account." Id.  Defendant then says, "No, it's going to be Bank of the West." Id.

4  Plaintiff's representative then says they will "have to pull that call" because of fraud concerns.[7]

5  Id.  Defendant Siela Madariaga expressed doubt the information could have come from defendant

6  Christina Madariaga, because "she doesn't have a Wells Fargo account." Id.

7  Defendant Siela Madariaga states a desire for plaintiff "to look up who owns that account,

8  because it's not me." Id.  Plaintiff's representative then says, "Let's get the money back you,"

9  and asks for the routing number. Id.  Defendant provides a routing number for Bank of the West

10 and an account number.  Plaintiff's representative ends the call by stating, "my main concern . . .

11 is to get this money back to you." Id.  Defendant Siela Madariaga expresses concern that the

12 transfer "be done properly and sent to the right place." Id.  Plaintiff's representative assures the

13 defendant that it "will be done properly" and the representative will be "making sure that you get

14 your money back." Id.

15 In short, plaintiff's evidence contradicts plaintiff's assertions that the defendants

16 intentionally misled plaintiff.

17 > Under Federal Rule of Civil Procedure 56, a moving party is entitled
18 > to summary judgment only upon a showing that there are no genuine
> issues of material fact requiring a trial.  The party opposing the
> motion is under no obligation to offer affidavits or any other
19 > materials in support of its opposition.  Summary judgment may be
> resisted and must be denied on no other grounds than that the movant
20 > has failed to meet its burden of demonstrating the absence of triable
> issues.

21

22 Henry v. Gill Industries, Inc., 983 F.2d 943, 950 (9th Cir. 1993).  Moreover, district courts should

23 act "with caution in granting summary judgment," and may "deny summary judgment in a case

24 where there is reason to believe the better course would be to proceed to a full trial." Anderson v.

25 Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also General Signal Corp. v. MCI

26 Telecommunications Corp., 66 F.3d 1500, 1507 (9th Cir. 1995) ("district court's discretion to

27 ───────────

28 [7] It does not appear that plaintiff produced audio of the purported call providing the Wells Fargo transfer information.

send a case to trial if the judge has doubt as to the wisdom of terminating the case before trial").

Here, for the reasons explained above, plaintiff has failed to meet the burden of proving the absence of a genuine issue of material fact.  And, based on the evidence presented by plaintiff, the undersigned has reason to believe the better course would be for this action to proceed to a full trial.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that plaintiff's February 7, 2022, motion for summary judgment (ECF No. 56) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 7, 2022

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.pro se\freedom2432.msj.f&rs

14