1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   FREEDOM MORTGAGE
     CORPORATION,                              No.  2:19-cv-2432-DC-SCR
12
                      Plaintiff,
13
14          v.
                                               FINDINGS AND RECOMMENDATIONS
15   SEILA MADARIAGA,
16                    Defendant.
17

18

19          Plaintiff Freedom Mortgage Corporation has filed a motion for default judgment against

20   Defendant Seila Madariaga.[1]  ECF No. 107.  Magistrate Judge Barnes heard the motion on June

21   13, 2024 and took it under submission.  This action was reassigned to the undersigned on August

22   6, 2024.  ECF No. 117.  The motion for default judgment is before the undersigned pursuant to

23   Local Rule 302(c)(19).  Plaintiff's motion implicates the apparently novel question of whether

24   default judgment against one defendant should be entered when the court declined to grant

25   summary judgment against another defendant and the complaint refers to the two defendants

26

27   [1]  Defendant Seila Madariaga's name was misspelled by Plaintiff in earlier filings as "Siela".
     District Judge Mueller in a February 28, 2024 order (ECF No. 106) directed the Clerk to correct
28   the spelling on the docket.

1   collectively and does not distinguish their culpability.  The undersigned hereby recommends that

2   the motion be DENIED for the reasons set forth herein, including because the Court declined to

3   grant summary judgment against a similarly situated co-defendant.

4                    **BACKGROUND and PROCEDURAL HISTORY**

5            Plaintiff initiated this matter by filing a complaint on December 4, 2019.  ECF No. 1.

6   Plaintiff brought several state law claims against Defendants Christina Madariaga and Seila

7   Madariaga arising from a real estate transaction.  ECF No. 1.  Plaintiff was the loan servicer for

8   Defendants' mortgage.  *Id*. at 1-2.  Among other things, Plaintiff alleges that Defendants, after

9   selling the property in question and having payoff funds wired to Plaintiff, unlawfully induced

10  Plaintiff to return those funds to them.  *Id*. at 3-4.  Plaintiff raises claims for conversion, unjust

11  enrichment, fraud, and civil theft and sought $104,652 in damages plus statutory damages and

12  attorneys' fees and costs.  ECF No. 1 at 4-6.

13           Christina[2] appeared pro se and filed an Answer and Counterclaim.  ECF Nos. 6 & 7.  On

14  June 15, 2020, Plaintiff requested entry of default against Seila—who has never made an

15  appearance on the docket—and default was entered on June 18, 2020.  ECF Nos. 16 & 17.

16  Plaintiff then moved for a preliminary injunction against Christina seeking to have the Court

17  order her to pay $104,652 into the registry of the Court.  ECF No. 22.  That motion was denied.

18  ECF Nos. 32 & 33.  Judge Barnes found that Plaintiff did not make a showing of irreparable

19  harm.  ECF No. 32 at 6.

20           Plaintiff then moved for summary judgment.  ECF No. 35.  The motion for summary

21  judgment was denied without prejudice because the parties had conducted no discovery.  ECF

22  No. 49 at 4-5.  Plaintiff filed a second motion for summary judgment ("MSJ") on February 7,

23  2022.  ECF No. 56.  The second MSJ was also denied.  ECF Nos. 61 & 66.  In recommending the

24  MSJ be denied, Judge Barnes noted Plaintiff's proffered evidence was "slight, contradictory, and

25  falls far short of satisfying Plaintiff's burden of establishing a lack of dispute as to any material

26  fact."  ECF No. 61 at 9.

27

28  [2]  Defendants will be referred to hereafter by their first names for clarity.

Thereafter, Plaintiff and Christina participated in a settlement conference on August 23, 2023, at which the case did not settle.  ECF No. 92.  A further settlement conference was held on September 13, 2023.  ECF No. 94.  The case was then reassigned to Judge Mueller and she set a final pretrial conference for March 8, 2024.  ECF No. 101.  Plaintiff then moved to voluntarily dismiss Christina.  ECF No. 103.  The motion stated that Plaintiff wanted to voluntarily dismiss Christina and proceed with a request for default judgment as to Seila.  On February 28, 2024, Judge Mueller granted Plaintiff's motion to dismiss Christina and allowed 30 days to file a motion for default judgment.  ECF No. 106.

Plaintiff filed the motion for default judgment ("MDJ") on March 28, 2024 (ECF No. 107) and Judge Barnes heard the MDJ on June 13, 2024.  Plaintiff's counsel Zachary Frampton was present, but Defendant Seila did not appear.  ECF No. 116.  The undersigned has reviewed and considered the audio recording of the motion hearing which was approximately two minutes in duration.  Plaintiff's motion for default judgment seeks to have the Court award $98,043.88 in damages against Seila.  *See* Proposed Order at ECF No. 107-4.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for default judgment.  Upon entry of default, the complaint's well-pled factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven.  *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323 (7th Cir. 1983) (citing *Pope v. United States*, 323 U.S. 1 (1944); *Geddes v. United Fin. Group*, 559 F.2d 557 (9th Cir. 1977).

Granting or denying default judgment is within the court's sound discretion.  *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  The court considers a variety of factors in exercising its discretion.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Among them are:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute

3

concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

## ANALYSIS

### I.     Service

Plaintiff argues that the Court should enter default judgment against Seila because she was properly served, never responded to the complaint, and the *Eitel* factors weigh in favor of default judgment.  ECF No. 107-1 at 10.  Plaintiff contends that Seila was personally served with the summons and complaint on January 21, 2020.  ECF No. 4.  The Clerk entered default on June 18, 2020.  ECF No. 17.  The return of service states that "Siela Madariaga" was served.  The Complaint and Summons also misspelled Seila's first name.  ECF Nos. 1 & 2.  This slight error in spelling does not invalidate otherwise proper service.  *See Sakaguchi v. Sakaguchi*, 173 Cal.App.4th 852 (Cal. Ct. App. 2009) (first name spelled "Takechi" instead of "Takeshi" of no consequence when documents were received and no prejudice is identified).  The Clerk's entry of default also contained the incorrect spelling.  ECF No. 17.  The Court finds an adequate showing of service and will proceed to the *Eitel* factors.

### II.     The *Eitel* Factors

#### A.  Possibility of Prejudice to the Plaintiff

The first *Eitel* factor contemplates the possibility of prejudice to the plaintiff if a default judgment is not entered.  *Eitel*, 782 F.2d at 1471.  Prejudice can be established where failure to enter a default judgment would leave plaintiff without a proper remedy.  *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal 2002).  Here, one of the two defendants (Christina) appeared and defended the action.  Plaintiff was unable to satisfy the burden of obtaining summary judgment against that defendant.  A plaintiff's difficulty in establishing liability against one defendant might suggest a general weakness in the plaintiff's case and therefore a lower probability of prejudice, on the theory that a plaintiff is not substantially prejudiced by losing out on a case that has questionable merit to begin with.  Nevertheless, because Plaintiff would

apparently have no remedy absent default judgment, this first factor weighs lightly in favor of
default judgment.

### B. Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint

The second and third *Eitel* factors "relating to the merits of Plaintiffs' claims and the
sufficiency of the complaint, can be discussed in tandem." *Ramirez v. Michael Cookson Const.*,
Inc., 2023 WL 4743050 (E.D. Cal. July 25, 2023) (internal citation omitted). Because this case
involves two defendants, one of whom appeared and defended the action, the undersigned first
examines applicable doctrine concerning motions for default judgment in multi-defendant cases.

### 1. Default Judgment in Actions Involving Multiple Defendants

"The leading case on the subject of default judgments in actions involving multiple
defendants is *Frow v. De La Vega*, 82 U.S. 552 (1872)." *In re First T.D. & Inv.*, *Inc.* 253 F.3d
520, 532 (9th Cir. 2001). Under *Frow*, "where a complaint alleges that defendants are jointly
liable and one of them defaults, judgment should not be entered against the defaulting defendant
until the matter has been adjudicated with regard to all defendants." *Id.* at 532. "It follows that if
an action against the answering defendants is decided in their favor, then the action should be
dismissed against both answering and defaulting defendants." *Id.* The Ninth Circuit observed it
would be "incongruous and unfair" to allow a party to prevail against defaulting defendants on a
theory that was rejected by the court as to answering defendants. *Id.*

Courts have expanded the *Frow* doctrine beyond its original context of jointly liable co-
defendants. It also applies to co-defendants who "are 'similarly situated,' such that the case
against each rests on the same legal theory." *Garamendi v. Henin*, 683 F.3d 1069, 1082 (9th Cir.
2012), citing *In re First T.D. & Inv.*, *Inc.*; *see also Moore v. Booth*, 122 F.4th 61, 67 (2nd Cir.
2024) ("We, along with the majority of federal appellate courts, have held that the *Frow* principle
is not limited to cases of joint liability but more generally prohibits a default judgment that is
inconsistent with a judgment on the merits.") (internal citation and quotation omitted).

In this case, the Complaint does not differentiate between the Defendants. In the opening
paragraph Christina and Seila are defined collectively as the "Defendants." ECF No. 1 at 1.
Thereafter, there are no separate allegations concerning the actions of Christina or Seila. Rather,

each factual allegation is against them collectively.  The two Defendants are clearly similarly situated based on the allegations in the complaint.

Despite the joining of Christina and Seila in the complaint, there is no risk of an inconsistent judgment because Plaintiff voluntarily dismissed Christina.  As such, the expanded *Frow* doctrine does not squarely apply.  However, entering default judgment in favor of Plaintiff would be in some tension with the Court's earlier summary judgment ruling as to Christina.  After engaging in discovery, Plaintiff unsuccessfully sought summary judgment against Christina.  This situation certainly touches on a core premise of the *Frow* doctrine: when "facts are proved that exonerate certain defendants and that as a matter of logic preclude the liability of another defendant," the plaintiff should not be allowed to obtain a default judgment against that non-participating defendant.  *Moore,* 122 F.4th at 67-68.   Here, the Court did not enter judgment as to Christina, but it found the evidence presented inadequate to establish her liability.  Accordingly, the undersigned does not find that the *Frow* doctrine precludes default judgment, but will proceed through the second and third *Eitel* factors informed by the principles underlying that doctrine.

### 2. The Second and Third Factors Weigh Against Default Judgment Where the Court Declined to Enter Summary Judgment Against Christina and the Complaint Alleges that the Two Defendants Are Similarly Situated

Plaintiff alleges that Christina and Seila unlawfully obtained and deprived FMC of funds owed to FMC for satisfaction of a Note and Mortgage on real property.  ECF No. 1 at ¶ 1.  All of the allegations in the complaint are against Christina and Seila jointly as "Defendants."  It is alleged that Defendants executed a note secured by a deed of trust on real property in April 2009. *Id.* at ¶ 6.  FMC alleges it became the loan servicer in 2015.  *Id.* at ¶ 7.  Plaintiff claims Defendants made a payment of $4,232 in June 2019, then requested a payoff quote, which FMC issued before the $4,232 payment was rescinded for insufficient funds.  *Id.* at ¶¶ 8-9.  Plaintiff claims this resulted in Defendants receiving an artificially low payoff quote.  Defendants sold the property on June 11, 2019, using Old Republic as the closing agent and Old Republic wired FMC in the amount of $114,568 (the Funds) as part of the closing, but the Funds were insufficient to

1  pay off Defendants' loan.  Defendants then made calls to FMC asking that the Funds be returned

2  to Old Republic.  *Id.* at ¶ 13.  Defendants however provided wiring instructions to an account at

3  Wells Fargo that belonged to Defendants.  *Id.* at ¶ 14.  Plaintiff refused to transfer the Funds.

4  However, "Defendants further manipulated FMC" by providing new wiring instructions to

5  transfer the Funds back to Bank of the West, which is the bank Old Republic had used.  However,

6  FMC alleges, based on information and belief, that the Bank of the West account was controlled

7  by Defendants.  *Id.* at ¶ 16.

8       In Count I, Plaintiff claims the Funds were converted when "Defendants unlawfully

9  mislead FMC" into transferring the Funds without FMC's consent.  *Id.* at ¶¶ 20-24.  Count II

10  alleges unjust enrichment.  *Id.* at ¶¶ 25-29.  Count III alleges fraud, and Count IV alleges "civil

11  theft."  Plaintiff alleges: "Defendants obtained the Funds knowing they were stolen or obtained

12  through in a manner constituting theft."  *Id.* at ¶ 37.  Plaintiff asserts that Cal. Penal Code §

13  496(c) authorizes recovery of treble damages and attorney fees.  *Id*. at ¶ 40.  Plaintiff's motion for

14  default judgment argues the Counts for conversion, unjust enrichment, and civil theft support the

15  entry of a default judgment.[3]  ECF No. 107-1 at 12-14.

16       The Second *Eitel* factor looks at the merits of the substantive claims.  Typically on a

17  motion for default judgment, this involves evaluating merely the sufficiency of the pleading

18  because the case has not proceeded beyond the pleadings.  As explained above, this is a

19  seemingly novel situation where the basic premise of the *Frow* doctrine, as expanded in modern

20

21  _____

   [3]  Plaintiff does not seek default judgment on the fraud count, perhaps an implicit concession that

22  it is insufficiently pled.  Federal Rule of Civil Procedure 9(b)'s particularity requirement applies
   to state law causes of action.  *Vess v. Ciba-Geigy Corp*., 307 F.3d 1097, 1103 (9th Cir. 2003).

23  This is true even where the Court's jurisdiction is based on diversity.  *Id.* ("We therefore reject
   [plaintiff's] argument that we should refuse to apply Rule 9(b) to his state-law causes of action in

24  this diversity case.").  In order to meet the heightened pleading standard, "a party must state the
   particularity of the circumstances constituting fraud," meaning that the "pleading must identify

25  the who, what, when, where, and how of the misconduct charged."  *United States ex rel. Cafasso
   v. Gen. Dynamics*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal citations and quotation omitted).

26  A party must also plead what is false or misleading about the purportedly fraudulent statement.

27  *Id.*  The fraud allegation is that "Defendants" collectively, made "numerous false representations
   and omissions."  ECF No. 1 at ¶ 31.  There is no allegation about a specific statement Seila made

28  that was fraudulent.

1    times to similarly situated defendants, informs assessment of the merits and analysis of the second

2    and third *Eitel* factors.  Plaintiff unsuccessfully sought summary judgment against Christina, and

3    then voluntarily dismissed Christina.

4         In reviewing the evidence presented at summary judgment, Judge Barnes found that

5    "much of that evidence directly contradicts plaintiff's argument."  ECF No. 61 at 10.  Judge

6    Barnes discussed documentary evidence that she found unconvincing, including the declaration of

7    Reginald Watkins, account notes, and a document entitled "Wire from Old Republic."  *Id.* at 10-

8    11.  Judge Barnes also stated that she had expected Plaintiff would submit "bank records

9    establishing ownership of the Bank of the West account, as well as perhaps transaction details."

10   *Id.* at 10.  The undersigned recognizes that Plaintiff has now submitted approximately 200-pages

11   of account statements covering a two-year period.  ECF No. 107-2.  These records establish that

12   Seila had an account at Bank of the West and they show there were large incoming wire transfers

13   consistent with the transfers alleged in the Complaint.  *See for example* ECF No. 107-2 at 10, 38,

14   39.  But these are just statements of account showing credits and debits.  These bank statements,

15   taken alone, do not demonstrate fraud, conversion, or theft.

16        Judge Barnes further reviewed audio recordings of twenty-one phone calls between

17   individuals purported to be Defendants and Plaintiff's account representatives.  ECF No. 61 at 11.

18   Judge Barnes stated, "the tenor of those phone calls is routinely one of the defendants calling with

19   questions or concerns regarding billing disputes and plaintiff's representatives sharing the

20   defendant's confusion or concerns."  *Id.*  Judge Barnes discussed in detail some of the phone calls

21   and concluded that Plaintiff's "evidence contradicts plaintiff's assertions that the defendants

22   intentionally misled plaintiff."  *Id.* at 13.

23        Plaintiff obtained two extensions of time to respond to Judge Barnes' Findings and

24   Recommendations, and then did not file objections.[4]  ECF Nos. 62-66.  The Findings and

25   Recommendations were then adopted.  ECF No. 66.  In evaluating the second *Eitel* factor, which

26

27   _____

28   [4]  "Failure to object to a magistrate judge's recommendation waives all objections to the
     magistrate judge's findings of fact."  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

1    is the substantive merit of Plaintiff's claims, the Court finds relevant the evidence presented and

2    findings of this Court upon the summary judgment record.

3         In evaluating the third factor, the sufficiency of the pleadings, the Court finds this factor

4    less weighty than the second factor, given that the prior summary judgment proceedings.  Plaintiff

5    is proceeding on claims of conversion, unjust enrichment, and civil theft.  The elements of

6    conversion under California law are: 1) the plaintiff's ownership or right to possession of the

7    property; 2) the defendant's conversion by wrongful act or disposition of property rights; and 3)

8    damages.  *Hass v. Travelex Ins. Servs.*, 555 F.Supp.3d 970, 982 (C.D. Cal. 2021).  The elements

9    of a claim for unjust enrichment are the receipt of a benefit and the unjust retention of the benefit

10   at the expense of another.  *Peterson v. Cellco Partnership*, 164 Cal.App.4th 1583, 1593 (Cal. Ct.

11   App. 2008).

12        To state a claim under Cal. Penal Code § 496(c) concerning receipt of stolen property, a

13   plaintiff must plead three elements: 1) the property was stolen; 2) the defendant was in possession

14   of it; and 3) defendant knew it was stolen.  *Hueso v. Select Portfolio Serv., Inc.*, 527 F.Supp.3d

15   1210, 1229 (S.D. Cal. 2021).  Obtaining money through fraudulent means does not necessarily

16   state a claim under the statute.  In *Hueso*, the court found that a misapplication of funds as part of

17   real estate transaction did not fall under § 496(c).  *Id.* at 1231-1232.  This is because some courts

18   have found that in in order to constitute "stolen" property, when the property in question comes

19   into defendant's hands, it must already have the character of having been stolen.  *See Grouse*

20   *River Outfitters v. NetSuite*, 2016 WL 5930273 at *14 (N.D. Cal. 2016) (finding plaintiff's money

21   was not stolen when defendant allegedly defrauded plaintiff of it).

22        Although the complaint is brief and somewhat conclusory, it is generally sufficient as to

23   the counts for conversion and unjust enrichment, and as Plaintiff is not seeking treble damages in

24   this MDJ, the Court will not address whether the § 496(c) claim is cognizable under the alleged

25   facts.  However, as touched upon above in the *Frow* discussion, the complaint is somewhat

26   lacking to the extent that if refers at all times collectively to "Defendants." *See Gotshalk v.*

27   *Hellwig*, 2014 WL 4699497 at *2 (D. Nevada 2014) (declining to enter default judgment based on

28   the *Frow* doctrine where the complaint alleged claims against defendants collectively and failed

1     to distinguish culpability of conduct).  There are no facts alleged as to specific actions taken by

2     Seila, and at the summary judgment stage Judge Barnes found that "plaintiff's evidence

3     contradicts plaintiff's assertions that the defendants intentionally misled plaintiff."  ECF No. 61 at

4     13.  Judge Barnes found not only that the evidence at summary judgment failed to meet the

5     burden of proof, but that it undermined some of the Complaint's allegations.  Thus, although the

6     claims of conversion and unjust enrichment are sufficiently pled, upon consideration of the

7     totality of the second and third *Eitel* factors—and in consideration of the principles underlying the

8     *Frow* doctrine and the summary judgment record—the undersigned finds that application of the

9     second and third *Eitel* factors weigh against the entry of default judgment.

10                  **C.  Sum of Money at Stake**

11        In weighing the fourth *Eitel* factor, "the court must consider the amount of money at stake

12    in relation to the seriousness of the defendant's conduct."  *PepsiCo, Inc.*, 238 F.Supp.2d at 1176-

13    77.  The factor weighs against default judgment when a large sum of money is at stake.  *Eitel*, 782

14    F. 2d. at 1472.  Here, Plaintiff seeks a relatively moderate award of approximately $100,000 in

15    damages.  The undersigned finds this factor does not weigh either for or against the entry of

16    default judgment.

17                  **D.  Possibility of Disputed Material Facts**

18        The fifth *Eitel* factor examines whether a dispute regarding material facts exists.  *Eitel*,

19    782 F.2d. at 1471-72.  Here, Seila has not appeared in the action, but her co-Defendant Christina

20    did appear and defended the action.  Generally, when a party fails to appear there is no possibility

21    for a dispute of material fact.  *See Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393

22    (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the

23    court clerk enters default judgment, there is no likelihood that any genuine issue of material fact

24    exists").  However, in this case, the allegations in the Complaint are against the Defendants

25    collectively, and Christina did defend the motion for summary judgment.  The Court found

26    Plaintiff failed to establish its right to summary judgment.  Judge Barnes stated: "[P]laintiff has

27    failed to meet the burden of proving the absence of a genuine issue of material fact."  ECF No. 61

28    at 14.  Accordingly, this factor weighs against the entry of a default judgment.

1    **E.  Whether the Default Was Due to Excusable Neglect**

2    The sixth *Eitel* factor considers whether a defendant's failure to answer is due to

3    excusable neglect.  *Eitel*, 782 F.2d at 1471-72.  This factor considers due process, ensuring a

4    defendant is given reasonable notice of the action.  *See Mullane v. Central Hanover Bank & Trust*

5    *Co.*, 339 U.S. 306, 314 (1950).  Here, Seila was served with a copy of the summons and

6    complaint and the proof of service filed.  ECF No. 4.  Additionally, the request for the Clerk to

7    enter default was served via mail on Seila.  ECF No. 16.  Under the circumstances, it is unlikely

8    that the Defendant's actions were the result of excusable neglect.  *Shanghai Automation*

9    *Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable

10   neglect because the defendants were served with the complaint, the notice of entry of default, as

11   well as the papers in support of the instant motion).  This factor weighs in favor of entry of

12   default judgment.

13   **F.  Policy of Deciding Cases on the Merits**

14   The seventh *Eitel* factor considers the courts' general disposition favoring judgments on

15   the merits.  *Eitel* 782 F.2d at 1472.  Seila's failure to appear has made a judgment on the merits of

16   Plaintiff's claims against her impossible.  However, the interest in deciding the case on the merits

17   is heightened by the fact that the Court has already found based on an evidentiary record at

18   summary judgment that "the better course would be for this action to proceed to a full trial."  ECF

19   No. 61 at 14.  The case cannot proceed to trial with Christina having been voluntarily dismissed

20   and Seila failing to appear.  Accordingly, the policy in favor of deciding cases on the merits does

21   not weigh strongly against entry of default judgment.

22   **CONCLUSION**

23   The decision of whether to enter default judgment ultimately rests in the Court's

24   discretion.  *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016) ("While there is

25   room to disagree whether default was warranted, our role is not to second guess the district

26   court's weighing of the *Eitel* factors.").  The undersigned has considered all the *Eitel* factors.  "Of

27   all the *Eitel* factors, courts often consider the second and third factors to be the most important."

28   *Ramirez v. Michael Cookson Const., Inc.*, 2023 WL 4743050 (E.D. Cal. July 25, 2023) (internal

1    quotation and citation omitted).  As discussed above, the undersigned finds that those two factors

2    weigh against the entry of default judgment.  "In general, entry of default judgment is not

3    appropriate where the second and third factors weigh against plaintiff."  *United States v. Salazar*,

4    2024 WL 3858714 (E.D. Cal. Aug. 19, 2024).  The undersigned finds that in considering the

5    totality of the *Eitel* factors, they weigh against the entry of a default judgment for Plaintiff.

6        Should the Court adopt these findings and recommendations, it is not necessarily the end

7    of the road for Plaintiff.  Plaintiff might again review the evidence gathered to date and summary

8    judgment record, seek leave to file an amended complaint specifically addressing Seila's liability

9    based on that evidence and record, and then again seek default if Seila has not appeared to defend

10   against the allegations in an amended complaint.

11       **IT IS HEREBY RECOMMENDED** that:

12       Plaintiff's motion for default judgment (ECF No. 107) be **DENIED**.

13       These findings and recommendations are submitted to the United States District Judge

14   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14)

15   days after these findings and recommendations are filed, any party may file written objections

16   with the court.  A document containing objections should be titled "Objections to Magistrate

17   Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed

18   within 14 days after service of the objections.  The parties are advised that failure to file

19   objections within the specified time may, under certain circumstances, waive the right to appeal

20   the District Court's order.  *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

21   Dated:  March 7, 2025

22

23

24                                                    SEAN C. RIORDAN
                                                      UNITED STATES MAGISTRATE JUDGE
25

26

27

28

12